IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

**DAVID ARCHUNDE, et al.**,

        Plaintiffs,

v.                                                               No. CIV 07-484 BB/RLP

**PUBLIC EMPLOYEES RETIREMENT
ASSOCIATION, et al.**,

        Defendants.

## MEMORANDUM OPINION

THIS MATTER comes before the Court for consideration of cross-motions for summary judgment filed by the parties (Docs. 50, 52). The Court has reviewed the submissions of the parties and the relevant law, and, for the reasons set forth below, finds that Plaintiffs' motion will be denied and Defendants' motion granted, and this case will be dismissed as a result.

**Facts:** The parties agree that the facts in this case are undisputed, and the only questions presented are questions of law. Plaintiffs are all police officers employed by the City of Albuquerque, New Mexico. All Plaintiffs had previously retired from their employment and had begun receiving pensions from Defendant Public Employees Retirement Association ("PERA"), and then returned to work with the City. Prior to 2004, state law did not allow an employee to receive a pension from PERA and at the same time work for a PERA-affiliated employer, unless the employee was paid less than $15,000 per year. In other words, if a retired employee went back to work and was receiving both a pension and a salary, payment of the pension would have to be suspended after the employee reached the earnings limit of $15,000, and the employee

would only receive his or her salary for the remainder of the year.  The New Mexico Legislature amended this prohibition in 2003, in a provision that took effect in 2004.  Under the amendment, an employee could be paid a pension and at the same time receive a salary from a PERA-affiliated employer, with no earnings limit.  Such an employee would be required to pay into the PERA retirement fund at the same rate as other employees who were not also receiving a pension.  However, the pension-receiving employees received no additional service credit in exchange for these payments -- no matter how many additional years these employees worked and paid into the PERA fund, their pensions would still be based on the number of years of service credit they had accumulated when they first retired.  As a result, the payments they made into the fund did not increase their pensions in any way either at present or in the future.

      All Plaintiffs signed documents agreeing to make the required payments into the PERA fund, and acknowledging that the contributions would not increase the amount of their retirement benefits.  All Plaintiffs made the required payments until the Legislature amended the applicable statute again, ending the payment requirement as of December 31, 2006.  *See* NMSA 1978, § 10-11-8(C)(2).[1]  Plaintiffs filed this lawsuit in an effort to recover the payments they made pursuant to the version of the statute that was in effect from 2004 to the end of 2006.

      **Discussion**:  Plaintiffs' position is simple.  They maintain they were forced to make payments into the PERA fund, and in exchange received absolutely no increase in either their current retirement benefits or their entitlement to future benefits.  According to Plaintiffs, money

---

[1] After that date, payment into the PERA fund became the responsibility of the employer of a retired-and-rehired employee; such an employer must now pay not only the usual percentage required of an employer, but also the amount that would normally be paid by the employee himself or herself.

is property, and the money they paid was taken from them without just compensation because PERA simply kept their payments without giving them anything in return. Plaintiffs contend this is a straightforward violation of the takings clause found in the Fifth Amendment of the United States Constitution.

Before addressing Plaintiffs' cause of action on the merits, the Court must dispose of a jurisdictional argument raised by Defendants. Defendants contend that before Plaintiffs can file an action in federal court claiming a deprivation of property without just compensation, they must exhaust all possible state remedies, including administrative and judicial remedies. *See Bateman v. City of West Bountiful*, 89 F.3d 704, 706-08 (10th Cir. 1996) (the issue of ripeness is a question implicating a court's subject matter jurisdiction; a claim of deprivation of property without just compensation is not ripe until the plaintiff has sought compensation through any procedures provided by the state, such as an inverse condemnation claim). If Defendants' position is correct, this Court would not have jurisdiction to decide the merits of Plaintiffs' claim. *See id.* However, as discussed below, no unconstitutional taking of private property occurred in this case. Therefore, Plaintiffs did not have any effective state-law remedies to pursue in an effort to obtain compensation, and ripeness is not an issue in this case.[2]

---

[2] The Court recognizes this reasoning is somewhat circular – it says in effect that Plaintiffs have no state remedies to pursue because their takings claim is not meritorious. Better stated, even though Plaintiffs ostensibly base their claims on the Fifth Amendment, in reality this is not a takings case at all, and the ripeness doctrine discussed in *Bateman* is simply not applicable. It is not unusual in the law to find situations in which the merits of a claim are intertwined with a jurisdictional question. This is especially true where, as in this case, both the merits and the jurisdictional question depend on how the federal Constitution should be interpreted and applied to a particular factual situation. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). In such a case, the court has jurisdiction over the dispute and should not dismiss for lack of jurisdiction. *Id.*

As to the merits, the Court cannot agree with Plaintiffs' analysis. Plaintiffs focus too narrowly on their pension benefits alone in arguing they received nothing in return for the payments they made to the PERA fund. In actuality, Plaintiffs received a significant benefit, consisting of the right to be paid both pension benefits and a salary at the same time. Under prior law, Plaintiffs did not have this right; the Legislature then granted them the right, but under limited conditions. In essence, the Legislature required Plaintiffs to pay a percentage of their salaries into the retirement fund as a fee, in return for the right to receive both a pension and a salary from the state at the same time (known as "double dipping" in popular parlance). The question, therefore, is whether this double-dipping fee can be considered an unconstitutional taking of property without just compensation.

The United States Supreme Court has twice addressed the issue of whether mandatory payments to a pension fund constituted a violation of the Fifth Amendment. In *Connolly v. Pension Benefit Guaranty Corporation*, 475 U.S. 211 (1986), the Supreme Court held that an employer withdrawing from a multi-employer pension plan could be statutorily required to pay a certain sum of money into the plan, in order to help the plan remain solvent, without running afoul of the Takings Clause. The Supreme Court appeared to agree that the employer had a protected property interest in the required payment, and applied the regulatory-taking analysis established in a prior Supreme Court case, *Penn Central Transportation Company v. City of New York*, 438 U.S. 104 (1978), to hold that no unconstitutional taking had occurred. *See Connolly*, 475 U.S. at 224-27. Subsequently, the Supreme Court reiterated this holding and analysis in *Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension Trust for Southern California*, 508 U.S. 602, 644-46 (1993).

Taking its lead from the Supreme Court, the Court will also apply the *Penn Central* test to the claimed taking that is at issue in this case. *See, e.g., Horvath v. State Teachers Retirement Bd.*, 697 N.E.2d 644, 650-52 (Ohio 1998) (following *Connolly* and applying *Penn Central* in case involving, in essence, forfeiture of interest earned on mandatory contributions to retirement fund). The *Penn Central* analysis requires application of a three-part test to determine whether payments or contributions required by the government constitute an unlawful taking of property. *See Connolly,* 475 U.S. at 225. This test involves an examination of the economic impact of the government's action on the plaintiff, the extent to which that action interferes with "distinct investment-backed expectations," and the character of the government's action – that is, whether it is a physical invasion or merely affects property interests through a program adjusting the benefits and burdens of economic life to promote the public good. *Id.*

In this case, the economic impact of the government's action was both beneficial and harmful to Plaintiffs. On the one hand, Plaintiffs had to pay 7.42% of their salaries into the PERA fund, without receiving a concomitant increase in retirement benefits. On the other hand, this payment allowed Plaintiffs to be paid a pension at the same time they were paid a salary, which on balance is a favorable economic impact on Plaintiffs. As to the interference-with-investment-backed-expectations factor, no such interference occurred in this case. It is undisputed that Plaintiffs entered into their employment contracts knowing they would have to pay the fee to PERA in order to be able to receive both their pensions and a salary. Thus, they could not have reasonably had any expectation they would not be charged the fee. *Cf. Connolly*, 475 U.S. at 227 (this factor weighed against employer where employer had ample notice, prior to its decision to withdraw from pension fund, that such withdrawal might trigger additional

financial obligations). Finally, the government's action in this case was not a physical invasion of property, the paradigmatic takings situation. Instead, it was a program designed to provide a benefit to both Plaintiffs (ability to double-dip) and their employers (ability to retain experienced employees), while ensuring the cost to PERA would not be prohibitive.[3] The Court notes that the case against finding an unconstitutional taking is even stronger here than in the *Connolly* or *Concrete Pipe* cases addressed by the Supreme Court. In those cases, employers were required by statute to pay withdrawal fees into a pension fund without receiving any direct benefit in return. In this case, on the other hand, Plaintiffs voluntarily paid the fees to PERA in order to receive a substantial benefit in return – the ability to draw both a pension and a salary at the same

---

[3]PERA presented uncontroverted actuarial evidence indicating that allowing such double-dipping to occur encourages more employees to retire early, which in turn costs the PERA retirement fund money because it is required to pay pension benefits earlier and for a longer period of time than it otherwise would. To address this problem, PERA required Plaintiffs to make the contested payments into the PERA fund. This is a classic example of "adjusting the benefits and burdens of economic life to promote the public good."

time.[4]  Weighing all these factors leads to the inescapable conclusion that no Fifth Amendment taking occurred in this case.  *See Connolly; Horvath.*

Plaintiffs attempt to avoid this adverse ruling by relying on two Supreme Court cases that are not persuasive.  Both of these cases involved the interest paid on IOLTA[5] accounts, and the government's use of that interest to benefit third parties other than the owners of the funds in the accounts.  *See Brown v. Legal Found. of Washington*, 538 U.S. 216 (2003); *Phillips v. Washington Legal Found.*, 524 U.S. 156 (1998).  These cases are inapposite, first of all, because they did not involve voluntary payments to the government; attorneys were required to open IOLTA accounts and were required to have the interest on those accounts paid to the

---

[4] In similar situations, some courts have held that where an individual voluntarily enters into a situation knowing he or she will be required to pay money to the government, the payment of that money is in essence a waiver of the right not to have property taken by the government. *See Hatfield v. Scott*, 306 F.3d 223, 229-30 (5th Cir. 2002) (where inmates chose whether or not to put money into inmate trust fund, with full knowledge that interest earned by the fund would be retained by the state, they essentially abandoned their property and waived any constitutionally protected property interest they may have had in the interest).  Furthermore, it is not entirely clear that Plaintiffs have any property interest at all in the money they volunteered to pay to PERA.  A protected property interest is generally created by state law, and arises only when the plaintiff has a legitimate claim of entitlement to the benefit.  *See Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).  It is difficult to see how Plaintiffs could have had a legitimate claim of entitlement to the payments they made to PERA; they specifically agreed to make those payments in order to obtain the ability to draw both a pension and a salary from state employers.  Furthermore, the New Mexico Legislature expressly and in no uncertain terms mandated that the payments be made in exchange for the benefit Plaintiffs received.  Under these circumstances, it does not appear Plaintiffs had a protected property interest in the money they paid to PERA.  *See Bloch v. Powell*, 227 F.Supp.2d 25, 38 (D.D.C. 2002) (existence of property interest in government pension benefits is dependent on statutes governing the pension system, and no property interest exists if statutes do not create entitlement to benefits).  Without such an interest, application of the *Penn Central* test is unnecessary, because no taking at all has occurred, let alone an unconstitutional taking.  Given the result of the Court's application of the *Penn Central* test, however, it is not necessary to decide whether either the waiver theory or the lack-of-property-interest theory applies to this case.

[5] "Interest On Lawyer Trust Account."

government.[6] In addition, these cases did not involve a situation in which an individual paid a fee to the government in exchange for a benefit provided by the government. The owners of the funds in the IOLTA accounts were complete third parties to the interest transactions, had no involvement in placing the funds in those accounts, and received nothing in return. In this case, on the other hand, Plaintiffs received a specific benefit from the state in exchange for the payments they made to the state. The only relevance *Brown* and *Phillips* have to this case is the proposition that a taking of money can, under certain circumstances, constitute a taking in violation of the Fifth Amendment. As discussed above, however, no such unconstitutional taking occurred in this case.

**Conclusion:** As discussed above, under the *Penn Central* analysis, no unconstitutional taking occurred when Plaintiffs made payments to PERA in order to be able to receive both a pension and a salary from a PERA-affiliated employer. For that reason, summary judgment will be granted to Defendants and this case will be dismissed.

Dated this 10th day of September, 2008.

_____
BRUCE D. BLACK
United States District Judge

---

[6] Plaintiffs state that participation in the IOLTA program was voluntary; this assertion is simply wrong, as a cursory reading of the cases should have established. *See Brown*, 538 U.S. at 224-28 (explaining history and mandatory nature of Washington's IOLTA program).